## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 10-321

**MB INDUSTRIES, LLC**

**VERSUS**

**CNA INSURANCE COMPANY, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 200810466
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## BILLY HOWARD EZELL
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Billy Howard Ezell, and Shannon J. Gremillion, Judges.

**REVERSED AND REMANDED.**

**James Ronald Clary, Jr.**
**Clary & Overton**
**850 North Blvd.**
**Baton Rouge, LA 70802**
**(225) 926-6788**
**Counsel for Defendants/Appellees:**
**Steven Gerald Durio**
**Durio, McGoffin, Stagg & Ackermann**
**Steven G. Durio, P.C.**

**Gracella Gail Simmons**
**Collin Joseph LeBlanc**
**Keogh, Cox, & Wilson**
**P. O. Box 1151**
**Baton Rouge, LA 70821**
**(225) 383-3796**
**Counsel for Defendants/Appellees:**
**John Haas Weinstein**
**Continental Casualty Company**
**John Haas Weinstein, APLC**

**Glen Scott Love**
**Robert Graves**
**320 Somerulos Street**
**Baton Rouge, LA 70802**
**(225) 387-6966**
**Counsel for Plaintiff/Appellant:**
**MB Industries, LLC**

**James Huey Gibson**
**Allen & Gooch**
**P. O. Box 81129**
**Lafayette, LA 70598-1129**
**(337) 291-1000**
**Counsel for Defendants/Appellees:**
**Durio, McGoffin, Stagg & Ackermann**
**Continental Casualty Company**
**Steven G. Durio, P.C.**
**Steven Gerald Durio**

**Milo Addison Nickel, Jr.**
**Elisa D. Davis**
**714 E. Kaliste Saloom Road, D-1**
**Lafayette, LA 70508**
**(337) 504-3647**
**Counsel for Plaintiff/Appellant:**
**MB Industries, LLC**

**Gary Russo**
**Nadia Marie de la Houssaye**
**Jones Walker**
**P. O. Drawer 3408**
**Lafayette, LA 70502-3408**
**(337) 262-9000**
**Counsel for Plaintiff/Appellant:**
**MB Industries, LLC**

**Juliette Busby Wade**
**P. O. Box 51308**
**Lafayette, LA 70505-1305**
**(337) 233-0300**
**Counsel for Plaintiff/Appellant:**
**MB Industries, LLC**

**EZELL, JUDGE.**

MB Industries, LLC appeals a trial court decision granting summary judgment in favor of Steven Durio and John Weinstein and dismissing its legal malpractice claims against them.

**FACTS**

MB Industries (MBI) manufactures blast-resistant buildings. MBI initially received its assets from another company, Moon Ventures LLC, which had been placed in bankruptcy. Mark Massey was an owner in Moon Ventures, and Sam Lavergne was an employee with Moon Ventures. Shortly after the asset transfer from Moon Ventures to MBI, Mr. Lavergne started Hunter Buildings, LLC, which also manufactures blast-resistant buildings. Later, Mr. Massey joined Mr. Lavergne at Hunter Buildings. MBI filed the underlying lawsuit in 2000 against Mark Massey, Sam Lavergne, and J. Bass, LLC claiming breach of noncompetition and trade secrets agreements, misappropriation of trade secrets, unfair and deceptive trade practices, and conversion of property. During different times Mr. Durio and Mr. Weinstein represented MBI in the proceedings. The underlying lawsuit was primarily based on the Defendants' competition with MBI for blast-resistant buildings at Exxon's refinery in Baton Rouge. Apparently, Mr. Massey and Mr. Lavergne had signed noncompetition agreements with Moon Ventures, which was the basis for the lawsuit.

A bench trial was held on November 10, 12, and 13, 2003, on the underlying lawsuit. By that time, Mr. Weinstein had withdrawn as counsel of record. Mr. Durio represented MBI at trial. The trial court ruled against MBI. MBI filed a lawsuit against Mr. Durio and Mr. Weinstein on March 16, 2004, claiming that it lost the lawsuit due to the malpractice of its attorneys before trial began. Specifically, MBI claims that both Mr. Durio and Mr. Weinstein failed to meet the trial court's cutoff

1

dates for amending the petition, adding parties, and conducting discovery. It also claims that they failed to conduct adequate discovery. Another allegation by MBI is that Mr. Durio lost a box of evidentiary materials and failed to seek a protective order of such evidence. MBI additionally alleged that Mr. Weinstein withdrew from the matter, indicating to the trial court that no trial date had been set, when he knew that a date had been set.

In August 2009, Mr. Durio and Mr. Weinstein filed motions for summary judgment. A hearing on the motions was held on September 28, 2009. The trial court granted both motions for summary judgment, dismissing MBI's claims against them. MBI then filed the present appeal.

## SUMMARY JUDGMENT

MBI argues that the trial court focused on only a portion of its claims against its former attorneys and failed to consider all of the claims set forth in its petition. MBI suggests that there are genuine issues of material fact which warrant a trial on the merits.

> Summary judgments are reviewed *de novo* on appeal, with the reviewing court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law. *Power Marketing Direct, Inc. v. Foster*, 05-2023 (La.9/6/06), 938 So.2d 662, 669; *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La.7/5/94), 639 So.2d 730, 750.

> A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ. Proc. art. 966(B). This article was amended in 1996 to provide that "summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action . . . The procedure is favored and shall be construed to accomplish these ends." La.Code Civ. Proc. art. 966(A)(2).

2

*La. Safety Ass'n of Timbermen Self-Insurers Fund v. La. Ins. Guar. Ass'n*, 09-23, p. 5 (La. 6/26/09), 17 So.3d 350, 353-54.

"Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion." *Id.* at 354.

In order to establish a claim for legal malpractice, a plaintiff must prove that (1) there was an attorney-client relationship; (2) the attorney was negligent in his representation of the plaintiff; and (3) plaintiff sustained a loss as a result of the attorney's negligence. *Costello v. Hardy*, 03-1146 (La. 1/21/04), 864 So.2d 129; *Morgan v. Simon*, 00-1556 (La.App. 3 Cir. 2/28/01), 780 So.2d 626.

In the lower court Mr. Durio and Mr. Weinstein argued several grounds that they claim entitle them to summary judgment in this case. They first make several arguments regarding MBI's inability to establish the third prong of a legal malpractice claim claiming that MBI cannot establish a loss as a result of any alleged malpractice. Mr. Durio and Mr. Weinstein first argue that MBI is estopped from asserting a legal malpractice claim against them because it failed to appeal the decision of the trial court. Mr. Durio and Mr. Weinstein also argue that MBI cannot prove a legal malpractice claim, because a legal malpractice claimant possesses no greater rights against an attorney than are available in the underlying claim citing *Costello*, 864 So.2d 129. Specifically, they argue that the trial court in the underlying suit found that even if the noncompetition agreement applied, it did not cover East Baton Rouge Parish, which is the parish that Hunter was doing business in resulting in the lawsuit filed by MBI.

In opposition to these arguments, MBI claims that the acts of malpractice it complains about occurred before trial and affected the outcome of the trial and that

3

an appeal would have been futile. It argues that it should not be required to appeal a case when it would be unreasonable, impractical, or disproportionately expensive considering all of the circumstances, citing *American Reliable Insurance Co. v. Navratil*, 445 F.3d 402 (5 Cir. 2006). MBI claims that the underlying case was viable but for the negligent acts of Mr. Durio and Mr. Weinstein.

**Necessity of Appeal**

Equitable estoppel has been defined by this court as the barring of an action by a complaining party against another party when the complaining party's conduct resulted in the other party justifiably relying on the complaining party's conduct such that he changed his position to his detriment based on such reliance. *Roberson v. Lafayette Oilman's Sporting Clays Shoot Inc.*, 02-1275 (La.App. 3 Cir. 4/30/03), 845 So.2d 1267, *writ denied*, 03-1531 (La. 9/26/03), 854 So.2d 370.

In *Murphy v. Gilsbar, Inc.*, 02-205 (La.App. 1 Cir. 12/31/02), 834 So.2d 669, *writ denied*, 03-676 (La. 5/30/03), 845 So.2d 1057, the first circuit applied the concept of equitable estoppel in ruling that a client could not bring a legal malpractice claim against her attorney. The client claimed that her former attorney let her discrimination claim prescribe. However, in an attempt to reinstate the claim, the client refused to participate, indicating that she no longer had an interest in her discrimination suit. Her inaction precluded revival of the action, so she waived her right to proceed with her malpractice suit.

The fifth circuit also applied the doctrine of equitable estoppel in a legal malpractice proceeding in *Gross v. Pieno*, 04-820, 04-821 (La.App. 5 Cir. 12/28/04), 892 So.2d 662, *writ denied*, 05-218 (La. 4/22/05), 899 So.2d 582. Clients had brought a legal malpractice claim against their former attorney for failure to prosecute civil claims which resulted in dismissal on the grounds of abandonment. The

4

judgment of abandonment was set for hearing, but the clients entered into negotiations with the defendants and entered into a settlement agreement which terminated the litigation in the underlying suit. By settling the claim before the issue of abandonment could be decided, the former clients prevented a determination of whether the action had been abandoned.

In *American Reliable Insurance Co.*, 445 F.3d 402, the fifth circuit held that the settlement of an underlying case did not bar the client from bringing a legal malpractice suit. The clients had proceeded all the way through a jury trial resulting in a large jury award against them. The fifth circuit distinguished *Gross*, 892 So.2d 662, because the clients in that case had settled their claims before there was any hearing on the abandonment issue, making it impossible for a court to determine if the attorney had in fact caused harm to his clients. The fifth circuit explained that the attorney's entire performance could be evaluated from the record of the state trial court proceedings in the case before it. The court reasoned that, while a client has a duty to mitigate damages caused by its attorney's malpractice, that duty cannot require the client "to undertake measures that are unreasonable, impractical, or disproportionately expensive considering all the circumstances." *American Reliable Ins. Co.*, 445 F.3d at 406. We agree with the reasoning of the fifth circuit.

In *Couture v. Guillory*, 97-2796 (La.App. 4 Cir. 4/15/98), 713 So.2d 528, *writ denied*, 98-1323 (La. 6/26/98), 719 So.2d 1287, the fourth circuit found that while a client had compromised part of his claim for damages against the employer school board, he still had the right to assert the claims that were not discharged. The fourth circuit agreed that the client could still pursue malpractice claims against his attorneys to establish that he would have been successful in a writ application to the supreme court to be reinstated to his former position had the attorneys sought a writ.

In the present case all claimed offenses took place before any appeal. A full record of the underlying proceeding is available. If it is established there were acts of malpractice, the attorneys can present evidence that had there been an appeal, they would have been successful. This goes to the issue of mitigation of damages. While part of their argument to this court is that an appeal would not be necessary because the underlying claim had no merit, there remain questions of fact on this issue. MBI claims that if the underlying case has no value, it is due to the malpractice of Mr. Durio and Mr. Weinstein.

**Underlying Litigation**

A plaintiff can have no greater rights against attorneys for the negligent handling of a claim than are available in the underlying claim. *Costello*, 864 So.2d 129.

The underlying case was a complicated commercial litigation case involving questions of breach of a noncompetition agreement, alleged violations of the Louisiana Unfair Trade Practices Act and the Louisiana Trade Secrets Act, conversion of property. Issues involved whether the noncompetition agreements were even enforceable by MBI since they were signed by Mr. Lavergne and Mr. Massey when Moon Ventures was doing business as Nautica. Furthermore, it is clear that East Baton Rouge Parish, the major parish where Hunter competed with MBI for Exxon's business, was not included in the noncompetition agreement. Reading Fred Gossen's deposition, the current president and CEO of MBI, it appears that there was some question of whether Hunter had competed in Calcasieu Parish with MBI. Calcasieu Parish had been included in the noncompetition agreement. The trial court also found that no trade secrets existed and if they did, MBI failed to carry its burden establishing the trade secrets and whether they were violated. Once again, Mr.

Gossen discussed what he considered trade secrets and his opinion that his attorneys failed to put on proper evidence concerning these issues. Part of MBI's allegation is that Mr. Durio lost a box of evidence which would have established a violation of trade secret agreements. Included in these allegations is the assertion that the attorneys failed to meet deadlines to add parties who MBI alleged had violated agreements and used MBI's research for the benefit of Hunter.

We find that there is a question of fact as to whether the underlying litigation had merit. The issue remains to be determined is whether it was the negligent handling by the attorneys that caused MBI's loss in the trial court.

**Expert Testimony**

Mr. Durio and Mr. Weinstein further claim that, regardless of what issues may be out there, MBI cannot establish its claim for legal malpractice because it has offered no expert testimony that they breached the standard of care in handling the case.

An attorney's paramount duty to his client is a greater duty of trust than in any other agency relationship. *Teague v. St. Paul Fire and Marine Ins. Co.*, 07-1384 (La. 2/1/08), 974 So.2d 1266. The standard of care an attorney must exercise in representing of a client is that degree of care, skill, and diligence exercised by prudent practicing attorneys in his locality. *Id.*

> Expert testimony is certainly admissible to establish the standard of care based on practices of attorneys in the community. In certain cases the opinions of experts may be essential to prove the standard of care an attorney must meet. In many cases, however, the trial court, which is of necessity familiar with the standards of practice in its community, is competent to make such a determination without the assistance of expert witnesses. There may also be cases in which the failure of the practitioner to use due care under any reasonable standard of conduct may be so obvious as to make expert testimony unnecessary.

7

*Watkins v. Sheppard*, 278 So.2d 890, 892 (La.App. 1 Cir. 1973); *Frisard v. State Farm Fire and Cas. Co.*, 06-2353 (La.App. 1 Cir. 11/2/07), 979 So.2d 494.

The allegations against Mr. Durio and Mr. Weinstein include the claim that both of them failed to meet the trial court's cutoff dates for amending the petition, adding parties, and conducting discovery. MBI further claims that both attorneys failed to conduct adequate discovery. MBI has also alleged that Mr. Durio lost a box of evidentiary material that affected the prosecution of the case. There is also an allegation that Mr. Weinstein withdrew from the matter after a trial date had been set and informing the court that no trial date had been set.

While the underlying case involved complicated issues, the allegations against Mr. Durio and Mr. Weinstein are not so complicated as to require expert testimony. While the facts are contested, whether these alleged acts of malpractice were negligent and whether they caused damage to MBI can be litigated without the aid of expert testimony. *Frisard*, 979 So.2d 494.

For the reasons set forth in this opinion, the judgment of the trial court, granting summary judgment in favor of Steven Durio; Steve G. Durio, P.C.; Durio, McGoffin, Stagg & Ackermann; Continental Casualty Company; John Haas Weinstein; John Haas Weinstein, APLC; and Continental Casualty Company LLC, and dismissing MB Industries' claims against them, is reversed. This matter is remanded to the trial court for further proceedings. All costs of this appeal are assessed equally between the Durio parties and the Weinstein parties.

**REVERSED AND REMANDED.**