PAUL A. BONIN, Judge.
liThe plaintiff and appellant, Nathan Lewis, instituted a legal malpractice suit against the defendants and appellees, Timothy Young and Timothy J. Young, APLC, *533 based on Mr. Young’s alleged failure to file a timely claim under the Longshore and Harbor Workers’ Compensation Act (“LHWCA”). After learning through discovery that Mr. Lewis had engaged- another lawyer to file his LHWCA claim and had accepted a settlement from his employer, the defendants moved for summary judgment on the basis that Mr. Lewis could not prove an essential element of his malpractice claim, specifically, a loss caused by Mr. Young.
Mr. Lewis opposed the motion, submitting his own affidavit as the sole evidence. He alleged that he accepted a settlement less than the value of his actual claim due to his uncertainty about its timeliness, and also that he suffered emotional and mental distress as a result of Mr. Young’s inaction. At the motion hearing, the trial judge found Mr. Lewis’ affidavit concluso-ry and struck it from the record. The judge then granted the summary judgment motion and dismissed | aMr. Lewis’ malpractice suit with prejudice. Mr. Lewis appeals both the rulings striking his affidavit and granting summary judgment.
We first find that the judge did not abuse her discretion by striking Mr. Lewis’ affidavit from the “field of evidence” after determining it conclusory and self-serving. Second, upon our de novo review of the summary judgment ruling, we conclude that the trial judge correctly ruled that Mr. Lewis failed to establish that genuine issues of material fact existed with regard to whether he suffered a loss caused by Mr. Young. Accordingly, we affirm the trial court’s grant of summary judgment.
We explain our decision in greater detail below.
I
In this Part, we begin with a fuller description of the facts giving rise to this case.
On or around April 1, 2011, Mr. Lewis sustained injuries while employed with Archer Daniel Midland Company (“ADM”) as a longshoreman. Mr. Lewis was standing on a wharf when-he heard somebody shout a warning to “watch out.” Believing that a mooring line on a nearby vessel, the MW Baltic Panther, was in imminent danger of breaking, Mr. Lewis abruptly turned and ran. The sudden movement, he alleges, caused' severe injuries to his back, neck, and knees. After initially returning to work, Mr. Lewis informed ADM of his accident and was treated by several doctors in the weeks and months that' followed.
ADM informed Mr. Lewis by letter in May of 2011 that they had determined his accident was unrelated to work and would therefore deny his compensation claim, but that he could file an LHWCA claim with the United States Department of Labor. Mr. Lewis retained the services of Mr. Young for purposes of filing such | aa claim; however, he terminated those services on or around July 2, 2012. Mr. Lewis was then informed on August 2, 2012, by his employer, but not by the Department of Labor, that no timely LHWCA claim had been filed. Shortly thereafter, Mr. Lewis retained another attorney who filed an LHWCA claim on August 8,2012.
Then Mr. Lewis instituted this legal malpractice suit, which proceeded simultaneously with his pending LHWCA claim. In his suit, he claimed that the failure of Mr. Young to file a timely claim under 33 U.S.C. § 901, et seq., constituted negligence and malpractice, causing him to lose any and all workers’ compensation benefits to which he would have been entitled.
While the malpractice lawsuit was pending, a claims examiner for the Department of Labor made a preliminary finding on *534 March 1, 2018; that Mr. Lewis had filed a timely LHWCA claim and had made a prima facie case of compensability. The parties elected to- go to trial before an administrative law judge, but on the eve of trial, March 5, 2014, Mr. Lewis and ADM agreed on a settlement, the amount of which is undisclosed in the record. The settlement was approved by the administrative law judge , on September 22, 2014.[1]
Learning through discovery that Mr. Lewis had. settled his LHWCA case with ADM, the defendants in this case moved 'for summary judgment, claiming that, in light of his settlement, Mr. Lewis could not demonstrate a loss as a result of Mr. Young’s inaction.
|4In his opposition to summary judgment, Mr. Lewis submitted his own affidavit. In it he attested that his settlement with ADM was less than the actual value of the claim and that he only accepted it because he feared that the claim would be dismissed as untimely had it proceeded to trial. Mr. Lewis also attested that he suffered extreme anxiety and emotional distress over his concerns about the possible untimeliness of his claim. He attributed Mr. Young’s failure to file a timely claim as the cause of his damages.
Neither Mr. Lewis nor his attorney at the time appeared for the summary judgment hearing.[2] Upon a timely objection by defendants, the trial judge found Mr. Lewis’ affidavit insufficient to carry his burden of proof and struck it from the record. She also found that Mr. Lewis had failed to establish a claim of legal malpractice,. specifically because he could not démonstrate that he suffered any loss caused by Mr. Young. She further found no evidence in support of his. emotional distress claim. Accordingly, the trial judge entered summary judgment in favor of the defendants and dismissed the malpractice suit with prejudice.
On appeal, Mr. Lewis argues that the lower court erred, in two respects: by striking his affidavit, which he contends was sufficient evidence to meet his burden of proof; and by failing to find the existence of genuine issues of material fact with regard to the monetary loss and emotional distress damages' caused by Mr. Young’s negligence.
n
.We first address the aspect .of the judgment striking Mr. Lewis’ affidavit.
IfiA
Generally, all relevant evidence is admissible. See La. C.E. art. 402. “Relevant evidence” is evidence which has any tendency to make the existence of any fact that is consequential to the determination of the action more or less probable than it would be without the evidence. See La. C.E. art. 401. As to affidavits submitted in summary judgment proceedings, La. C.C.P. art. 967 B provides that once a motion for summary judgment has been made and supported, the opposing party “may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or [ ] otherwise ... must set forth specific facts showing that there is a genuine issue for trial.” A trial court’s *535 ruling striking an . affidavit on summary judgment will not be overturned absent an abuse of discretion. See Madison v. Inter-Continental Hotels Corp., 14-0717, p. 8 (La.App. 4 Cir.8/26/15), 173 So.3d 1246, 1251 (internal citation omitted).
B;
Here, the affidavit of Mr. Lewis declared that the settlement from ADM was less than the full value of his LHWCA claim, and he only accepted it because he was worried about the claim’s. timeliness. In the same vein, he attested -that 'he suffered severe anxiety and emotional distress as a result of Mr. Young’s failure to file a timely claim. ■ He did not submit any other evidence. ¡,
We'find that Mr. Lewis’affidavit was insufficient to carry his "burden of proof oh summary judgment. First, it fails to show that the settlement award was an “unfavorable outcome.” See MB Industries, LLC v. CNA Ins, Co., 11-0303, p. 20 (La.10/25/11), 74 So.3d 1173, 1187. Next, the affidavit merely concludes that the settlement amount was less than the full value of his claim without offering any specific sums or figures. It is well established that affidavits with “conclusory ^allegations of fact which are devoid of specific facts are not sufficient to defeat summary judgment.” Cheramie Services, Inc. v. Shell Deepwater Production, Inc., 09-1633, p. 16 (La.4/23/10), 35 So.3d 1053, 1062; see also Surcouf v. Darling, 15-0278, p. 14 (La.App. 4 Cir.10/21/15), 177 So.3d 1085, 1094. Moreover, conclusory and nonspecific affidavits will not require a trial, even if the moving party cannot rebut the allegations therein. See Travelers Ins. Co. v. Liljeberg Enterprises, Inc., 7 F.3d 1203, 1207 (5th Cir.1993); see also Surcouf, 150278, p. 14, 177 So.3d at 1094. As to Mr. Lewis’ conclusion that Mr. Young was the cause of the unspecified loss, .his personal opinion of causation is insufficient to meet.his burden on summary judgment. See Sims-Gale v. Cox Communications of New Orleans, 04-0952, p. 5 (La.App. 4 Cir. 4/20/05), 905 So.2d 311, 313-14; Guichard v. Super Fresh/Sav-A-Center, Inc., 97-1573, pp. 4-5 (La.App. 4 Cir. 2/4/98), 707 So.2d 1013, 1015 (“The plaintiff may not satisfy [the] burden [of showing the existence of a genuine issue of material fact] by resting on mere allegations or by filing self-serving conclusory affidavits which merely restate those allegations.”). See also La. C.C.P. art. 967 B.
Given that Mr. Lewis’ affidavit failed to provide any specifics or non-conclusory statements, we do not find that’ the trial judge abused her discretion in' excludihg it.
Ill
, In this. .Part, we address the ruling granting summary judgment.
A
Appellate courts review the granting of summary judgment de novo -.under the same criteria the trial court utilizes in its determination of whether, summary judgment is appropriate. See Hardison v. Byrne, 15-0111, p... 4 (La.App. 4. Cir. 1712/9/15), 182 So.3d 1110, 1115. Summary judgment shall be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966 B(2).[3] - The burden of proof rests with the movant, but if the movant will not bear the burden of *536 proof at trial, i.e., if the movant is the defendant, then the movant’s burden on the motion “does not require him to negate all essential elements of the adverse party’s claim ... but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim ...” La. C.C.P. art. 966 C(2)[4] (emphasis added). If the nonmoving party thereafter fails to produce contrary factual support sufficient to show that he will be able to carry his burden of proof at trial, then there is no genuine issue of material fact and summary judgment is proper. La. C.C.P. art. 966 C(2);[5] see also MB Industries, 11-0303, p. 15, 74 So.3d at 1183.
In order to establish a valid legal malpractice claim against Mr. Young, Mr. Lewis “must show evidence sufficient to convince a reasonable trier of fact of (1) the existence of an attorney-client relationship; (2) negligent representation by the attorney; and (3) loss caused by that negligence.” MB Industries, 11-0303, p. 15, 74 So.3d at 1184; see also Rondeno v. Law Office of William S. Vincent, Jr., 12-1203, p. 15 (La.App. 4 Cir. 3/13/13), 111 So.3d 515, 524. Because Mr. Young’s motion for summary judgment focused exclusively on the third element, Mr. Lewis’ burden of proof -for purposes of this appeal requires that he show a causal | sconnection between Mr. Young’s alleged negligence and “the eventual unfavorable outcome of the litigation.” Id., 11-0303, p. 20, 74 So.3d at 1187.[6]
B
To support their motion, the defendants submitted the unchallenged affidavit of attorney Charlotte Meade, setting forth the means by which she had discovered, during her representation of defendants, that Mr. Lewis had filed and settled his LHWCA claim during the pendency of the malpractice suit. Several exhibits were attached: 1) Mr. Lewis’ claim for compensation filed with the Department of Labor; 2) documents obtained during discovery relating to the LHWCA claim, including the preliminary finding of timeliness by the claims examiner; 3) correspondence from ADM’s attorney stating that Mr. Lewis and his employer had reached a settlement agreement; and. 4) an order by the Department of Labor administrative law judge approving the settlement.
Reviewing the evidence in the light most favorable to Mr. Lewis, as the nonmoving party, see Luther v. IOM Co. LLC, 13-0353, p. 5 (La.10/15/13), 130 So.3d 817, 822, we find that defendants made a prima facie showing that there was an absence of factual support for an essential element of the legal malpractice claim. In reaching this conclusion, we do recognize that Mr. Lewis settled his LHWCA claim after he filed this lawsuit and was therefore required to alter his original argument as to loss.
*537 I ^Nevertheless, once defendants had made the required showing, the burden shifted to Mr. Lewis to show that there was a genuine issue of material fact as to whether he suffered a loss and could prove it at trial. But, considering the above discussion regarding the sufficiency of Mr. Lewis’ affidavit, see Part II, B, ante, and given our conclusion that the trial court did not abuse her discretion by excluding it as the sole evidence submitted in opposition, we find that Mr. Lewis did not and cannot satisfy his evidentiary burden at trial that Mr. Young’s alleged conduct caused him a loss. Accordingly, we find that the trial judge properly granted summary judgment in favor of the defendants after finding no genuine issues of material fact.
iy
Before concluding our explanation and for the sake of completeness, we turn to address two ancillary issues raised by Mr. Lewis.
A
In a supplemental brief, which was prepared by a different attorney than the original appellate attorney who has since withdrawn, Mr. Lewis argues that he qualified as a “seaman” under the Jones Act, see 46 U.S.C. §§ 30101-30106, and therefore would have been entitled to broader range of benefits than what he received under his settlement; the differential, he claims, demonstrates his loss. This was not argued in either his opposition to summary judgment, nor attested to in his affidavit.
It cannot not be questioned that claims filed under the LHWCA ordinarily have a lesser recovery potential than claims filed under the Jones Act. See Orgeron v. Avondale Shipyards, Inc., 561 So.2d 38, 41 (La.1990). Mr. Lewis did not, however, offer any evidence that he qualified as a “seaman,” the designation |inof which is required for eligibility to file a Jones Act claim. See Chandris, Inc. v. Latsis, 515 U.S. 347, 368-70, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995); Richard v. Mike Hooks, Inc., 01-0145, p. 3 (La.10/16/01), 799 So.2d 462, 465; see also 46 U.S.C. § 30104 (Personal injury to or death of seamen). And, more importantly for our purposes in disposing of this argument, the Jones Act provides a three-year statute of limitations, as opposed to the presumptive one-year period under the LHWCA. See 46 U.S.C. § 30106.[7] Thus, because Mr. Lewis was injured in 2011, he had until approximately 2014 to file a Jones Act claim, and had he not discharged Mr. Young in 2012, the latter could possibly have filed a timely claim (assuming seaman status). Further, considering that the LHWCA and the Jones Act provide mutually exclusive remedies, see Chandris, 515 U.S. at 355-56, 115 S.Ct. 2172, any loss caused by a supposed failure to file a Jones Act claim would appear to lie not with Mr. Young but rather with one of the attorneys retained after Mr. Young’s discharge. See Carter v. Mule, 346 So.2d 882, 883-84 (La.App. 4 Cir.1977) (claim remained viable in fact and in law at time of defendant-attorney’s discharge).
B
The trial judge also granted summary judgment as to Mr. Lewis’ claims of *538 mental and emotional-distress. Mr. Lewis, however, did not raise such claim in his original petition, nor did he file an amended petition alleging such. See generally La. C.C.P. arts. 1151-1155 (Governing amendment of petition). The first time he raised the issue was in his opposition to summary judgment and therefore the defendants’ motion for summary judgment did not address the issue. See La. |T1C.C.P. 'art.- 966 F(l) (“A summary judgment may be rendered or affirmed only as to those issues set forth in the motion under consideration by the court at that time.”-).-' Nevertheless-, the trial-judge'considered the claim.
A plaintiff can have no greater rights against attorneys for the negligent handling of a claim than are available in the underlying claim. See Costello v. Hardy, 03-1146, pp. 9-10 (La.1/21/04), 864 So.2d 129, 138; Hardison, 15-0111, p. 6, 182 So.3d at 1118. We emphasize this point because under the LHWCA, a claimant can only recover specific statutory, benefits on account of injuries sustained in the course of employment. See 33 U.S.C. § 902(2). Mr. Lewis attested in his affidavit that he suffered mental and.emotional distress as a result, of Mr. Young’s alleged negligence, not as a result of his work-related injuries. Moreover, a claim for negligent infliction of emotional distress, unrelated to employment, is not cognizable under the LHWCA. See generally Metropolitan Stevedore Co. v. Rambo, 515 U.S. 291, 296, 115 S.Ct. 2144, 132 L.Ed.2d 226 (1995) (purpose of LHWCA is to compensate worker for economic harm, as it is defined in terms of wage-earning capacity); Atkinson v. Gates, McDonald & Co., 838 F.2d 808, 809-10 (5th Cir.1988) (recognizing that while claims may be cognizable under Mississippi state law, exclusivity liability provisions and penalty provisions relating to late payment of benefits under LHWCA operated to bar plaintiffs claims of intentional infliction of emotional distress); see also Levene v. Pintail Enterprises, Inc,, 943 F.2d 528, 531 (5th Cir.1991) (“[T]he LHWCA ... generally replaces negligence causes of action against employers with a system of predetermined, standardized benefits.”).
|iaAs such, Mr. Lewis was not and is not able to recover damages in his legal malpractice suit against Mr. Young for the negligent infliction of emotional distress on account of the alleged malpractice.
DECREE
We affirm the trial court’s judgment on April 13, 2015, which granted summary judgment and dismissed with prejudice all claims of Nathan Lewis against Timothy Young and Timothy J. Young, APLC, for legal malpractice. All costs are taxed to the appellant, Mr. Lewis. See La. C.C.P. art. 2164.
AFFIRMED

. Mr. , Lewis also filed a third-party, suit against the vessel MY Baltic Panther and the stevedoring company, Cooper/T. Smith Mooring Co., Inc. He received a $60,000 settlement in that case. See Lewis v. M/V Baltic Panther, et al., 12-2207 (E.D.La.1/6/15) (unpub’d) 2015 WL 94689.

. In a motion for rehearing, Mr. Lewis explained that counsel was not present at the hearing due to a "calendaring issue."

. This is how the statute read at the time the motion for summary judgment was filed. It has since been.amended, effective January 1, 2016. See 2015 La. Acts. 422.

. This section has since been amended. See n. 3, ante.

. See n. 3, ante.

. We note that a party does not waive his right to file a legal malpractice claim by merely settling an underlying suit, unless it is determined that a reasonably prudent party would not have done so, given the facts known at the time and avoiding the temptation to view the case through hindsight. See MB Industries, 11-0303, p. 13, 74 So.3d 1173, 1183; Saussy v. Bonin, 12-1755, pp. 5-6 (La.App. 4 Cir. 9/4/13), 125 So.3d 1, 5; see also Brassette v. Exnicios, 11-1439, pp. 4-5 (La.App. 1 Cir. 5/14/12), 92 So.3d 1077, 1080. We need not address whether Mr. Lewis acted as a reasonably prudent party, however, because the defendants do not argue that Mr. Lewis should be estopped from filing a malpractice suit as a result of the settlement. Cf. MB Industries; Saussy; Brassette, supra.

. The employer, and not the claimant, bears the burden of proving that an LHWCA claim is filed too late. See 33 U.S.C. § 920(b) ("In any proceeding for the enforcement of a claim for compensation under this chapter is shall be presumed, in the absence of substantial evidence to the contrary ... [t]hat sufficient notice of such claim has been given.”); Avondale Shipyards, Inc, v. Vinson, 623 F.2d 1117, 1120 (5th Cir.1980).